861 F.2d 655
 27 Fed. R. Evid. Serv. 430
 Carrie V. JONES, Plaintiff-Appellee,
v.
OTIS ELEVATOR COMPANY, Defendant/Cross-Claimant-Defendant,
Appellant/Cross-Appellee,
v.
EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES,
Defendant/Cross-Claimant-Plaintiff,
Appellant/Cross-Appellant.
 No. 87-8776.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 8, 1988.
 
 Ben L. Weinberg, M. Diane Owens, Kathryn S. Whitlock, Atlanta, Ga., for Otis Elevator Co.
 Kathleen M. Pacious, R. Chris Irwin & Associates, R. Chris Irwin, Atlanta, Ga., for Equitable Life.
 Douglas R. Powell, Fortson & White, Atlanta, Ga., for Carrie V. Jones.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before TJOFLAT and FAY, Circuit Judges, and FAWSETT*, District Judge.
 FAY, Circuit Judge:
 
 
 1
 Defendant, Otis Elevator Company, appeals a jury verdict entered for plaintiff, Carrie Jones, in a diversity suit brought in the United States District Court for the Northern District of Georgia. In this personal injury suit, the plaintiff alleged Otis' negligent maintenance of an elevator resulted in the elevator's malfunction which proximately caused plaintiff's back injuries. On appeal, Otis assigns a long list of reversible error to several of the district court's jury charges and evidentiary rulings. Principally, Otis argues it was error to instruct the jury on the missing witness inference and negligence per se, and to admit the testimony of the plaintiff's expert. We find no error in the trial court's admission of the expert testimony nor with the court's charge on the missing witness inference. Further, although the trial judge may have erred by instructing the jury on negligence per se, due to the specific circumstances of this case, we find this error harmless. Therefore, we affirm.
 
 BACKGROUND
 
 2
 Carrie V. Jones, appellee/plaintiff, worked as a maid in Northcreek Office Park in Atlanta. Ms. Jones was the only witness to the event which led to her back injuries. She testified that after completing her work on May 25, 1984, at approximately 7:45 p.m., she entered elevator number three with her maid cart on the seventh floor, intending to travel to the ground floor. The elevator did not stop on the ground level, but hit the bottom of the elevator shaft, bouncing several times. Ms. Jones stated that during the bouncing she felt her back pull. When the elevator doors opened, the elevator was several inches below the ground floor. Ms. Jones then exited the elevator pulling her maid cart behind her.[1]
 
 
 3
 Ms. Jones brought this action against Otis Elevator Company (Otis), Schindler Elevator Corporation (Schindler), and Equitable Life Assurance Society of the United States (Equitable) to recover for her back injuries.[2] Schindler manufactured the elevator. Otis was under contract with Equitable, the building owner, to maintain the elevator in good repair. The trial judge granted Schindler a directed verdict at the close of the plaintiff's evidence which the plaintiff does not appeal. Otis and Equitable agreed to submit Equitable's crossclaim against Otis for indemnity to the trial judge for decision following the trial on plaintiff's claims. The jury returned a $75,000 verdict in favor of plaintiff against both Otis and Equitable. The trial judge then granted Equitable's crossclaim for indemnity against Otis.
 
 
 4
 Subsequently, Otis timely filed a Motion for Judgment Notwithstanding the Verdict or in the alternative, a Motion for New Trial and a Motion for Alteration or Amendment of Judgment. The trial judge denied all these motions. On appeal, Otis asserts numerous errors. Specifically, Otis contends it was error: 1) to instruct the jury on the missing witness inference, negligence per se and constructive knowledge/notice; 2) to admit the plaintiff's elevator expert testimony; 3) to admit testimony regarding two Otis maintenance reports from December, 1982; 4) to deny motions for directed verdict, new trial and judgment notwithstanding the verdict; and 5) to grant Equitable's crossclaim for indemnity.[3] We address each contended error in turn.
 
 I. Jury Instructions
 A. Missing Witness Inference
 
 5
 In closing argument, the plaintiff's counsel commented on Otis' and Equitable's failure to call three of their employees as witnesses. Plaintiff's counsel insinuated that if the defendants had called any of these employees to testify, the testimony would have proved prejudicial to defendants. The defendants did not object to these comments. The plaintiff requested a missing witness charge which the trial judge granted. The judge charged: "If a party fails to call a person who possesses knowledge about the facts in issue and who is reasonably available to him and who is not equally available to the other party, then you may infer that the testimony of that witness is unfavorable to the party who could have called that witness and did not do so." On appeal, Otis challenges this instruction, arguing the charge is improper since plaintiff made no showing that any missing witness was physically unavailable or outside plaintiff's subpoena power.
 
 
 6
 The question presented here is what foundation of unavailability must the requesting party lay to obtain the missing witness inference charge. The United States Supreme Court established the missing witness rule nearly 100 years ago when the Court stated "that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893). Interpreting this language, courts have set forth two criteria which must be established before comment or instruction on the inference is appropriate.[4] Dent v. United States, 404 A.2d 165, 169 (D.C.1979); Georgia Southern & Florida Railway C. v. Perry, 326 F.2d 921, 925 (5th Cir.1964); McClanahan v. United States, 230 F.2d 919, 925 (5th Cir.), cert. denied, 352 U.S. 824, 77 S.Ct. 33, 1 L.Ed.2d 47 (1956); Ford v. United States, 210 F.2d 313 (5th Cir.1954); Western & A.R. Co. v. Morrison, 102 Ga. 319, 29 S.E. 104 (1897); Ga.Code Ann. Sec. 24-4-22 (1982).
 
 
 7
 First, the requesting party must establish the potential witness' unavailability in a physical or practical sense; and second, the potential testimony must be relevant and noncumulative. Georgia Southern & Florida Railway Company v. Perry, supra, 326 F.2d at 925 (5th Cir.1964). A witness' availability is not determined solely from his physical presence at the trial or his accessibility to subpoena. Rather, availability also will turn on the witness' relationship to the nonproducing party. A witness is unavailable in a practical sense when this relationship is such that it creates bias or hostility against the opposing party. McClanahan v. United States, 230 F.2d 919, 926 (5th Cir.1956); Trammell v. Williams, 97 Ga.App. 31, 101 S.E.2d 887, 890 (1958); see generally 3 Wigmore, Evidence Secs. 285-288 (4th Ed.1979).[5] Because of an employee's economic interests, the employer-employee relationship is recognized as one creating practical unavailability. Chicago College of Osteopathic Medicine v. George A. Fuller Co., 719 F.2d 1335, 1353 (7th Cir.1983); Western & A.R. Co. v. Morrison, supra; Annotation, Presumption-Failure to Call Witness, 5 A.L.R.2d 893, 896 (1949).[6]
 
 
 8
 In this case, two of the potential witnesses were Otis elevator mechanics who serviced the elevator in question. The third missing witness was an employee of the building owner, Equitable, in charge of reporting to Otis any problem with the building's elevators. This employer-employee relationship is sufficient to establish the required practical unavailability. Hence, the first criterion has been met.
 
 
 9
 This relationship, however, does not end the inquiry. A party need not account for every witness cognizant of the facts with whom he shares a peculiar relationship. Western & A.R. Co. v. Morrison, supra, 29 S.E. at 106; Fields v. Yellow Cab Co. of Atlanta, 80 Ga.App. 569, 56 S.E.2d 845 (1949). Rather, the potential testimony must be superior to that relied on at trial. United States v. Llamas, 280 F.2d 392 (2nd Cir.1960). In this case, two missing witnesses were elevator mechanics who directly serviced the elevator in question. Although Otis' maintenance supervisor testified at trial, his testimony was based on the reports filled out by these service mechanics. Since at least one of the missing witnesses could have testified from personal knowledge regarding the service of the elevator in question, the testimony would have been both relevant and noncumulative.[7] The missing witness instruction, therefore, was permissible.
 
 B. Negligence Per Se
 
 10
 Otis contends the instruction on negligence per se was reversible error since the plaintiff presented no evidence Otis violated any statute or ordinance. At trial, the only evidence presented regarding an ordinance was testimony by plaintiff's expert, Mr. Gober. Mr. Gober testified that an Atlanta ordinance required the terminal stopping device to be inspected twice a year. However, on cross examination, Mr. Gober admitted the inspection requirement allegedly violated by defendants was not mandated by law, but rather was merely recommended as a guideline for elevator inspections.[8] Neither plaintiff nor defendants requested the court to take judicial notice of the ordinance or formally presented the text of the ordinance as evidence. Despite this, the trial judge gave the negligence per se instruction requested by the plaintiff. The judge charged the jury that "negligence per se is a violation of a public duty required by law for the protection of the public." Although the defendants objected to this charge, they made no objection to the expert's discussion of the Code or manual.[9]
 
 
 11
 Under Georgia law, the violation of a valid statute or ordinance constitutes negligence per se. Wilson v. Georgia Power & Light Co., 200 Ga. 207, 36 S.E.2d 757 (1946). In this case, no ordinance was introduced. The defense counsel did read the pertinent portions of the ordinance during cross-examination. Without deciding whether such is a sufficient predicate or whether some form of waiver would be applicable, we move on to the question of harm or prejudice because error without injury does not require reversal. Childers v. Ackerman Construction Company, 211 Ga. 350, 86 S.E.2d 227 (1955). The burden is on the appellants to show error affirmatively by the record and also to show injury resulting from such error. Jacobs v. Rittenbaum, 193 Ga. 838, 20 S.E.2d 425 (1942). We find no injury here.
 
 
 12
 The negligence per se charge in this case did not appear to be a standard negligence per se charge.[10] The charge did not set forth the text of the ordinance nor did it refer to the law allegedly violated. Further, we are not dealing with evidence that is otherwise inadmissible. The ordinance was probably admissible as an industry standard. It is clear from the uncontradicted testimony in the record that the manual referred to is used by elevator companies, municipalities, insurance companies and others as a standard guide for maintenance.
 
 
 13
 Finally, the ordinance was not a major issue in the overall context of the case. The ordinance was not even mentioned in the plaintiff's counsel's closing argument. Moreover, Mr. Gober admitted that the inspection requirements were merely recommended guidelines, not mandatory conduct required by law. The jury could have concluded that no public law existed which the defendants violated. Finding the existence of an ordinance was not necessary to substantiate the jury's verdict for the plaintiff. Therefore, although charging the jury on negligence per se may have been error, due to the actual charge given in this case and the evidence of the alleged ordinance before the jury, we find the error harmless.
 
 C. Constructive Notice/Knowledge
 
 14
 Otis assigns error to the instruction on constructive knowledge/notice, contending the plaintiff presented no evidence any condition existed which should have alerted the defendants of the need to repair the elevator.[11] In response, the appellee points to testimony regarding maintenance reports from December, 1982, as sufficient evidence to support the charge. Otis contends the trial judge erroneously admitted this testimony.
 
 
 15
 Before addressing the issue concerning the constructive notice charge, we first consider the admissibility of the testimony concerning the maintenance reports. Otis argues the plaintiff failed to show that the incidents reflected in the reports were substantially similar or close enough in time to Ms. Jones' incident. We have held that "evidence of similar accidents might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation." Ramos v. Liberty Mutual Ins. Co., 615 F.2d 334, 338 (5th Cir.1980) (citations omitted). Because of the potential prejudicial impact of prior accidents, courts have developed limitations governing their admissibility. First, conditions substantially similar to the occurrence in question must have caused the prior accident. Id. at 339 (quoting Jones & Laughlin & Steel Corp. v. Matherne, 348 F.2d 394, 400 (5th Cir.1965)). Second, the prior accident must not have occurred too remote in time. Id. Determining the remoteness of evidence is within the trial judge's discretion. Keyes v. School Dist. No. 1, 521 F.2d 465 (10th Cir.1975), cert. denied, 423 U.S. 1066, 96 S.Ct. 806, 46 L.Ed.2d 657 (1976).
 
 
 16
 The Otis maintenance reports indicated the elevator was found shut down. This meant that the down final limit switch, one of the mechanisms which disengages the elevator when the normal stopping device malfunctions, had been activated. Transcript at 5-282. Otis asserts the incidents are dissimilar because during the plaintiff's mishap, the elevator did not disengage when the normal stopping device malfunctioned. We find no merit in this argument. A malfunction in the normal stopping device was common to each incident.
 
 
 17
 Further, the incidents reflected in the reports were not too remote in time from the plaintiff's incident. These incidents occurred in December, 1982, approximately 18 months before plaintiff's mishap. Mr. Gober testified that the terminal stopping device had not been serviced in two to three years or perhaps never. The trial judge could have determined these reports were relevant within that time period to determine what if anything was done to service the elevator. Since the reports reflected substantially similar incidents which were not too remote in time, the trial judge did not abuse his discretion in admitting the testimony concerning these maintenance reports. With the information in the reports properly before the jury, this information could be used as evidence from which the jury could infer notice. We find no error with the trial judge's charge on constructive notice.
 
 II. Plaintiff's Expert Testimony
 
 18
 At trial, plaintiff's expert, Mr. Gober, testified that a failure of the normal stopping device and improper setting of the terminal stopping device caused the accident plaintiff described. Mr. Gober based his opinion on two personal inspections of the elevator on December 30, 1986 and January 5, 1987, more than two years after plaintiff's accident. Defendants objected to the testimony asserting that Mr. Gober had no way of connecting the elevator conditions found in 1987 to those that existed in 1984.
 
 
 19
 Outside the jury's presence, the plaintiff proffered questions regarding the foundation for Mr. Gober's opinion that the conditions existing in 1987 also existed in 1984. Mr. Gober stated that in his opinion the settings had not been inspected in two to three years or perhaps never. He derived this opinion from his examination of available maintenance reports and his position that had a qualified person inspected the settings, this person would have corrected the deficiency. Further, due to a heavy layer of dust and dirt which had accumulated on the cover over the setting devices, it appeared no one had removed the covering to check the settings in two to three years. The trial judge admitted the testimony leaving the question of whether the condition existed in 1984 to the jury. On appeal, Otis assigns error to the admission of this testimony. Otis contends that since Mr. Gober's findings were remote in time, his opinions were merely guesswork and speculation.
 
 
 20
 It is true that relevant testimony from a qualified expert is admissible only if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation. Horton v. W.T. Grant Co., 537 F.2d 1215, 1218 (4th Cir.1976); Calhoun v. Honda Motor Co., LTD., 738 F.2d 126, 132 (6th Cir.1984); Polk v. Ford Motor Co., 529 F.2d 259, 271 (8th Cir.), cert. denied 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976); Fed.R.Evid. 705. However, absolute certainty is not required. Expert testimony is admissible which connects conditions existing later to those existing earlier provided the connection is concluded logically. See Breidor v. Sears, Roebuck and Co., 722 F.2d 1134, 1138 (3rd Cir.1983). Whether this logical basis has been established is within the discretion of the trial judge and the weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility. Horton v. W.T. Grant Co., supra, 537 F.2d at 1218; Polk, supra, 529 F.2d at 271; Taenzler v. Burlington Northern, 608 F.2d 796 (8th Cir.1979); Wilder Enterprises, Inc. v. Allied Artists Pictures Corp., 632 F.2d 1135 (4th Cir.1980). On cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.
 
 
 21
 In this case, we find no error with the admission of this expert testimony. The expert had over 30 years experience as an elevator engineer and was extremely familiar with the operation and appearance of this elevator stopping device. His conclusion that the box had not been serviced in years or maybe never was within his range of knowledge as an elevator expert. Further, the basis for his opinion was brought out on direct and thoroughly subjected to cross-examination. Hence, the jury could evaluate the weight to be given the testimony. We find as long as a logical basis exists for an expert's opinion and the inadequacies are fully disclosed to the jury, the weaknesses in the underpinnings of the opinion, go to the weight and not the admissibility of the testimony.[12]
 
 
 22
 III. Sufficiency of Evidence to Support Verdict
 
 
 23
 Otis challenges the denial of Otis' motions for directed verdict, new trial and judgment n.o.v. on the ground that the plaintiff presented no evidence Otis maintained the elevator negligently.[13] In reviewing the trial judge's order, this court must examine the record carefully, viewing all the evidence before the jury in the manner most favorable to the plaintiff. Spurlin v. General Motors Corp., 528 F.2d 612, 614-615 (5th Cir.1976). Considering the testimony of both the plaintiff and Mr. Gober in the light most favorable to the plaintiff, we find their testimony sufficient to establish substantial evidence of Otis' negligence in maintaining the elevator. While the evidence of Otis' negligence was certainly conflicting,[14] it is the traditional function of the jury and not the court to weigh conflicting evidence and inferences, and evaluate the credibility of witnesses. Boeing Co. v. Shipman, 411 F.2d 365, 375 (5th Cir.1969). We find a conflict in the evidence existed such that reasonable persons in the exercise of impartial judgment could reach differing conclusions. Id. at 374. Therefore, the trial judge properly denied these motions.
 
 IV. Equitable's Crossclaim for Indemnity
 
 24
 Finally, Otis challenges the trial court ruling granting indemnity to Equitable. The contract between these parties did not contain an indemnity agreement. However, the trial judge found that based on common law indemnity and active-passive negligence, Equitable was entitled to indemnity despite a jury verdict adjudging Equitable a joint tortfeasor.[15] Otis asserts granting indemnity was improper since Equitable's liability constituted the same type of negligence as Otis' and Equitable's duty to maintain the elevator was nondelegable.
 
 
 25
 Generally, under Georgia law, a joint tortfeasor is not permitted to maintain an action for indemnity against another tortfeasor. Standard Oil Co. v. Mount Bethel United Methodist Church, 230 Ga. 341, 196 S.E.2d 869 (1973).[16] An exception to this general rule exists where a joint tortfeasor's liability arose from negative action or omission, such as failure to inspect, and the other tortfeasor's active, positive acts of negligence proximately caused the plaintiff's injuries. Id; Colt Industries Operating Corp. v. Coleman, 246 Ga. 559, 272 S.E.2d 251, 253 (1980); Peacock Const. Co. v. Montgomery Elevator Co., 121 Ga.App. 711, 713, 175 S.E.2d 116, 118 (1970); Central of Georgia Ry. Co. v. Macon Ry. & Light Co., 140 Ga. 309, 78 S.E. 931, 932 (1913).
 
 
 26
 In this case, Equitable's liability arose from its failure to discover a dangerous condition created or maintained by Otis. The trial court found Otis negligently serviced the elevator only a few days prior to the plaintiff's accident which proximately caused the plaintiff's injuries. We believe the act of maintaining is an affirmative duty the negligent performance of which can constitute active negligence. Further, ample law exists to support the proposition that a mere failure to inspect alone constitutes passive negligence where another tortfeasor has committed affirmative acts directly causing the injuries. See Standard Oil Co. v. Mount Bethel United Methodist Church, supra, 196 S.E.2d at 872; Peacock Const. Co., supra, 175 S.E.2d at 118; Central of Georgia Ry. Co., supra, 78 S.E. at 933; Annotation, Contribution or Indemnity Between Joint Tortfeasors Where Injury to Third Person Results from Violation of a Duty Which One Tortfeasor Owes to Other, 140 A.L.R. 1306 (1942) [hereinafter Contribution and Indemnity ]; see cases cited in Restatement of Restitution, Reporter's Notes Sec. 95 (1937) (supp. 1965).[17]
 
 
 27
 A more difficult issue is whether Equitable's duty to maintain the elevator in a safe condition is nondelegable precluding its right to indemnity. The Restatement of the Law of Restitution provides that "[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other." Restatement of Restitution Sec. 76 (1937) (also quoted in Coleman v. General Motors Corp., 386 F.Supp. 87, 89 (N.D.Ga.1974); Central of Georgia Ry. Co. v. Lester, 118 Ga.App. 794, 165 S.E.2d 587, 592 (1968)).
 
 
 28
 While Equitable owed an independent duty to inspect, Otis by contracting with Equitable to maintain the elevator undertook to discharge this duty on Equitable's behalf. We see no reason why two parties cannot agree as between themselves who will carry the primary responsibility for maintenance. Although a building owner's duty to maintain the elevators has been labeled nondelegable, this label concerns the duty the building owner owes to the plaintiff and not the delegation of the duty as between the building owner and a third party. See e.g. White v. Milner Hotels, Inc., 267 Or. 628, 518 P.2d 631 (1974) (concerned liability solely between the injured party and a hotel owner). Similarly, an employer's duty to employees to provide a safe place to work is a nondelegable duty.[18] However, indemnity traditionally has been granted to employers where a contractor negligently created a dangerous condition at the workplace which caused injuries to an employee.[19] In this case, although Equitable's duty to the plaintiff remains nondelegable, this does not preclude an action for indemnity. We find that while Equitable was free to delegate its maintenance responsibilities to a third party, it could not in so transferring avoid its ultimate responsibility to the plaintiff. Therefore, the trial judge properly granted indemnity to Equitable.
 
 V. Summary
 
 29
 We find no error with the instructions regarding the missing witness inference or constructive notice. The plaintiff's expert logically concluded the elevator conditions existing in 1987 also existed in 1984, so any flaw in this conclusion went to the weight, not the admissibility of the testimony. In view of the plaintiff's testimony and the plaintiff's expert testimony, a conflict in the evidence existed such that a reasonable jury could have reached differing conclusions. Therefore, the trial judge properly denied the motions for a directed verdict, new trial and judgment n.o.v. We agree with the trial judge that Equitable's failure to discover the dangerous elevator condition constituted passive negligence under Georgia law. Further, the trial judge correctly granted Equitable's crossclaim for indemnity since Otis' active negligence proximately caused plaintiff's injuries and the duty to maintain the elevator was delegable as between the defendants. Finally, although it may have been error to charge the jury on negligence per se since there was no formal introduction of the city ordinance, due to the testimony before the jury regarding the ordinance and the specific charge given in this case we find the error harmless.
 
 
 30
 AFFIRMED.
 
 
 
 *
 Honorable Patricia C. Fawsett, U.S. District Judge for the Middle District of Florida, sitting by designation
 
 
 [1]
 Defendants contend that plaintiff hurt her back not when the elevator bounced, but rather when she pulled her maid cart out of the elevator. While this could be true, the jury chose to believe the plaintiff hurt her back during the bouncing. We will not override the jury's decision on the credibility of a witness. Boeing Co. v. Shipman, 411 F.2d 365, 375 (5th Cir.1969)
 The Eleventh Circuit in Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.
 
 
 [2]
 Plaintiff originally brought this action in state court. The case was later removed to the United States District Court, Northern District of Georgia, Atlanta Division on May 23, 1986. Trial began on January 21, 1987 and ended in mistrial. A new trial began on March 30, 1987
 
 
 [3]
 Otis also alleges it was error to admit the testimony of one of the plaintiff's former coworkers, Harriet Harris, and to refuse to grant a mistrial after certain jurors reported unusual events on the courthouse elevators during the trial. See infra notes 12 and 13. We find no merit in these contentions and that they warrant no extensive discussion
 
 
 [4]
 We reach our decision without determining whether state or federal law controls the giving of the missing witness charge in a diversity suit in federal district court. However, we question its application under the Federal Rules of Evidence
 This inference derives from the general rule that failure to produce available evidence which is stronger than that relied on at trial justifies an inference that the stronger evidence would be unfavorable. Annotation, Presumption-Failure to Call Witness, 5 A.L.R.2d 893, 895 (1949). As previously mentioned, the Supreme Court embraced the rule as applicable to a missing witness long ago when the Federal Rules of Evidence were much different. Graves v. United States, supra. The rationale underlying the inference is that a party is not required to call a hostile witness since under the former evidence rules the calling party was required to vouch for the witness' credibility and was not permitted to impeach the witness. Further, it was believed that a party more closely connected with the witness would be better able to determine in advance what the potential testimony would be.
 Several dangers, however, are inherent in allowing the jury to draw an unfavorable inference from the absence of evidence. By creating evidence from nonevidence, the inference may artificially inflate one side of the case by giving undue significance to the missing witness. Dent v. United States, supra, 404 A.2d at 171. Moreover, the inference is typically argued in summation when evidence to explain the witness' absence can no longer be presented to the jury to mitigate the adverse inference. Id. Hence, courts such as the Court of Appeals for the District of Columbia require a factual determination on whether two criteria are met before counsel is permitted to comment to the jury on a potential witness' absence. Gass v. United States, 416 F.2d 767, 775-776 (D.C.Cir.1969).
 While such a procedure is useful to curb abuse of the inference, we question the wisdom of permitting the missing witness charge when the potential witness is within the subpoena power of both parties and physically available to be called. We question here only the propriety of an instruction on the inference and in no way address counsel's comment on the inference in closing argument. It is one thing for counsel to propose that something may be inferred from a given state of facts and quite another for the trial judge to instruct the jury that positions taken by counsel are correct. Western & A.R. Co. v. Morrison, supra, 29 S.E. at 105.
 With the evolution of the Federal Rules of Evidence, a party is no longer required to vouch for the credibility of a witness. Today, the calling party is free to impeach the credibility of any witness. Hence, the deterrent which existed against calling a hostile witness is no longer applicable. In addition, the more liberal discovery procedures permitted under the Federal Rules of Civil Procedure give opposing counsel the mechanism with which to discover in advance what the proposed testimony will be. The soundness of the rule permitting the missing witness charge was not challenged on this appeal.
 
 
 [5]
 See also Kean v. C.I.R., 469 F.2d 1183, 1188 (9th Cir.1972) (employer-employee); Samish v. United States, 223 F.2d 358, 365 (9th Cir.) (employer-employee), cert. denied, 350 U.S. 848, 76 S.Ct. 85, 100 L.Ed. 755 (1955); United States v. Beekman, 155 F.2d 580, 584 (2nd Cir.1946) (employer-employee); Dent v. United States, 404 A.2d 165, 170 (D.C.1979) (alibi witnesses subpoenaed by the government found not biased toward defendant)
 
 
 [6]
 See supra note 5
 
 
 [7]
 Although the inference was permissible due to the defendants' failure to call the elevator mechanic, we do not decide whether, if the defendants had called one mechanic they also must have ecalled the other two employees to avoid the inference
 
 
 [8]
 Mr. Gober testified that "the American Society of Mechanical Engineers sponsors a group called the American National Standards Institute that sets up subdivisions which write what they think are minimum requirements that people in the industry should follow. In the elevator situation, they sponsor the (A) 17.1, 2 and 3 sections of the Code...." Mr. Gober then stated that Atlanta adopted these standards as a city ordinance
 On cross-examination, defense counsel clarified the ordinance's meaning. When defense counsel read the text of the ordinance into the record, it became clear that A.N.S.I. (A) 17.2 in the Inspector's Manual for Elevators and Escalators is recommended as a guide for elevator inspections and is not a mandatory provision of the Atlanta Code.
 
 
 [9]
 We were surprised to learn the trial judge holds charge conferences without a court reporter present. We do not know whether this was an isolated instance or is routine, but, in any event, we urge all trial courts to either have a court reporter present for the full charge conference or to take some measures to ensure the record fully reflects all objections made to requested charges. Otherwise, there is simply no way for us to know whether objections were lodged or the basis for such
 
 
 [10]
 For example, the recommended instruction on negligence per se for the federal courts contains a specific reference to the statute or ordinance allegedly violated and thoroughly explains the presumptions which stem from the law's violation. J. Devitt and C.B. Blackmar, Federal Jury Practice and Instructions Sec. 80.14 (3rd Ed. 1977)
 
 
 [11]
 The trial judge charged that "means of knowledge are ordinarily the equivalent of law to knowledge, so if it appears from the evidence in the case that a person had information which would lead a reasonably prudent person to make inquiry through which he would surely learn certain facts, then this person may be found to have had actual knowledge of those facts and the same as if he had made such an inquiry and had actually learned such facts.... Knowledge or notice may also be established by circumstantial evidence. If it appears that a certain condition has existed for a substantial period of time and that the defendant had regular opportunities to observe the condition, then you may draw the inference that he had knowledge of the condition."
 
 
 [12]
 Otis also challenges the trial court's admission of Harriet Harris' testimony, arguing the plaintiff made no showing that Ms. Harris' incident was substantially similar to the plaintiff's as required by the defendants' motion in limine. Pursuant to this motion, the trial judge entered an order which excluded evidence regarding problems with the building's other elevators and admitted evidence regarding the elevator in question subject to three limitations: 1) the plaintiff can show one of the defendants had notice of the problem; 2) the prior problem must have occurred under conditions substantially similar to plaintiff's incident; and 3) the prior problem must not have occurred too remote in time. Transcript at 3-60; see Weeks v. Remington Arms Co., 733 F.2d 1485, 1491 (11th Cir.1984)
 Ms. Harris testified that in May 1984, she was also a maid at Northcreek Office Park when she rode the elevator in question. She entered the subject elevator on the third floor intending to travel to the ground floor. The elevator, however, passed below the ground floor and stopped between the basement and ground floor. A security guard reengaged the elevator and Ms. Harris exited unharmed.
 Otis contends this incident was not substantially similar to Ms. Jones' experience because unlike the plaintiff's incident, the elevator did not stop abruptly and bounce. We find no merit in this argument. Both incidents demonstrated a problem with the device which stopped the elevator on the appropriate floor. The trial judge did not err in admitting this testimony.
 
 
 [13]
 Otis also argues the trial court erred in refusing to grant a mistrial after several jurors reported unusual occurrences in the courthouse elevators. We find no error in the trial court's handling of this situation. The trial judge conducted individual voir dire of the jury and found the incidents nonprejudicial. Several jurors experienced some shaking and bobbing in a courthouse elevator. It does not appear these incidents affected the jurors' ability to decide this case objectively and impartially based on the evidence before the court
 
 
 [14]
 To contradict Mr. Gober's testimony, defendants' experts testified that they tested the terminal stopping device and found it to operate as intended
 
 
 [15]
 Occasionally, the Georgia courts have merged the active/passive negligence rule into one which appears to cover both indemnification and contribution. Collins v. Seaboard Coastline R. Co., 681 F.2d 1333 (11th Cir.1982) (citing Central of Georgia Railway v. Macon Railway & Light Co., supra; Peacock Const. Co. v. Montgomery Elevator Co., 121 Ga.App. 711, 175 S.E.2d 116 (1970); Standard Oil v. Mount Bethel United Methodist Church, 230 Ga. 341, 196 S.E.2d 869 (1973)). Hence, it is important here to note that Equitable's claim is for indemnification. A successful claim for indemnification shifts the entire burden of loss to the active tortfeasor and is governed by common law. In contrast, contribution merely apportions damages among tortfeasors and is governed by statute. Ga.Code Sec. 105-2012
 
 
 [16]
 While we found Standard Oil unpersuasive in Collins v. Seaboard Coastline R. Co., supra, 681 F.2d at 1333, our criticism focused on the case's misapplication of the rules governing contribution and indemnification and not on the general principles of indemnification the case set forth. See also supra note 15
 
 
 [17]
 In Central of Georgia Ry. Co. v. Macon Ry. & Light Co., supra, the Georgia Supreme Court considered whether a railroad was entitled to indemnity from a light company it had hired to install and maintain an arc light. The court found the light company was actively negligent for maintaining the wires and the circuit with which the wires were connected in a dangerous condition which proximately caused the railroad employee's electrocution. In contrast, the railroad's negligence was passive, consisting of a breach of its independent duty to inspect the electric circuit and wires
 
 
 [18]
 Shenker v. Baltimore & O.R. Co., 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963); Hepner v. Southern Railway Co., 182 Ga.App. 346, 356 S.E.2d 30 (1987)
 
 
 [19]
 See supra note 17 and Contribution and Indemnity, supra; cases cited in Restatement of Restitution, Reporter's Notes Sec. 95 (1937) (suppl. 1965)