Darrell HEWITT, Zenilda
Hewitt, Plaintiffs,

v.

LIBERTY MUTUAL GROUP,
INC., Defendant.

No. 6:09–cv–1183–Orl–18DAB.

United States District Court,
M.D. Florida,
Orlando Division.

May 27, 2010.

Mark Vernon Morsch, The Morsch Law Group, Winter Park, FL, for Plaintiffs.

Ilana Tabacinic, Mark S. Shapiro, Akerman Senterfitt, Miami, FL, for Liberty Mutual Group, Inc.

Steven Roger Schooley, The Schooley Law Firm, Orlando, FL, for Higgenbotham Engineering, Inc.

## ORDER

DAVID A. BAKER, United States Magistrate Judge.

This cause came on for consideration without oral argument on the following motion filed herein:

**MOTION: DEFENDANT'S MOTION TO DISQUALIFY EXPERT TESTIMONY FROM DAVID BEASLEY AND TO PROHIBIT EXPERT TESTIMONY BY WILLIAM THOMPSON** (Doc. No. 44)

**FILED: May 3, 2010**

**THEREON** it is **ORDERED** that the motion is **GRANTED in part** and **DENIED in part** as set forth below.

On August 27, 2009, Plaintiffs Darrell and Zenilda Hewitt filed their Amended Complaint alleging one count for breach of insurance contract against Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") arising out of damage to their residence during "one or more hurricanes" in August 2004. Plaintiffs seek to recover damages under their Liberty Mutual homeowners' insurance policy for the shifting of their roof and movement of their roof tiles. Plaintiffs plan to offer the opinions of Mr. Thompson and Mr. Beasley that the damage was caused by windstorms. Liberty Mutual's theory is that there is no coverage under the applicable policy because the roof shifting was caused by lateral movement of the roof decking system, resulting from lack of proper lateral bracing of the trusses and inadequate roof sheathing—a construction deficiency. Liberty Mutual bases its theory on inspections and reports by its expert, Richard Hessler, a professional engineer from Rimkus Consulting Group.

Liberty Mutual moves to disqualify expert testimony from Plaintiffs' expert David Beasley as unqualified, and prohibit testimony from William Thompson as untimely designated. Plaintiffs respond that both should be allowed to testify as experts because Mr. Beasley's qualifications are sufficient and Mr. Thompson, even though he was not originally disclosed as an expert, has been deposed by Liberty Mutual, which will not be prejudiced.

## I. Procedural Standards for Designation of Experts and Reports

Federal Rule of Civil Procedure 26(a)(2)(A) provides that "a party must disclose to the other parties the identity of any witnesses it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."

Fed.R.Civ.P. 26(a)(2)(A). This disclosure must include "a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed.R.Civ.P. 26(a)(2)(B). The report must also contain the following information: a complete statement of all the opinions the expert plans to express and the basis for them; the data considered by the expert in forming the opinions; any exhibits intended to be used in summarizing or supporting the opinions; the experts' qualifications including a list of all authored publications in the previous ten years; a list of all the other cases in which the witness testified as an expert during the previous four years; and a statement of the compensation the expert is to receive for the study and testimony in the case. Fed.R.Civ.P. 26(a)(2)(B)(i)-(vi). These disclosures must be made "at the times and in the sequence that the court orders." Fed.R.Civ.P. 26(a)(2)(C).

"Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, ... compliance with the requirements of Rule 26 is not merely aspirational." *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir.2004) (internal citation omitted), *overruled on other grounds, Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006). To this end, Rule 37(c)(1) provides a self-executing sanction for untimely expert reports. In relevant part, Rule 37(c)(1) states that [i]f a party fails to provide the information required by Rule 26, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1).

■ Substantial justification is "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Ellison v. Windt*, No.6:99–cv–1268–Orl–KRS, 2001 WL 118617(M.D.Fla.Jan.24, 2001)(quotation and

citation omitted). A failure to timely make the required disclosures is harmless when there is no prejudice to the party entitled to receive the disclosure. *Home Design Servs. Inc. v. Hibiscus Homes of Fla., Inc.*, No. 6:03–cv–1860–Orl–19KRS, 2005 WL 2465020 (M.D.Fla. Oct. 6, 2005). The party failing to comply with Rule 26(a) bears the burden of establishing that its non-disclosure was either substantially justified or harmless. *Surety Assocs., Inc. v. Fireman's Fund Ins. Co.*, No. 3:02–cv–223–J–16TEM, 2003 WL 25669165 (M.D.Fla. Jan.7, 2003).

*Application to Plaintiffs' Designation of William Thompson*

 According to the Case Management and Scheduling Order ("CMSO") entered by the Court on August 31, 2009, Plaintiffs and Defendant were originally required to disclose its expert reports by March 1, 2010; April 2, 2010 was set as the discovery deadline. Doc. No. 26. Plaintiffs were granted an extension in which to disclose their expert and expert report, until April 6, 2010, and Liberty Mutual was granted leave to depose the experts (only) until April 22, 2010. Doc. Nos. 39, 41. On April 6, 2010, Plaintiffs served their expert disclosures naming only Mr. Beasley and Adam D. Mrozek as their experts. Doc. No. 44–2.

There is no dispute that Plaintiffs failed to comply with the disclosures as required by Rule 26(a). Plaintiffs concede that they failed to designate Mr. Thompson as an expert[1]—as opposed to a fact witness—by the court-ordered deadline of April 6, 2010, and failed to provide his curriculum vitae, a list of cases in which he has testified, and a statement of compensation. Doc. No. 45 at 7. In response to Liberty Mutual's Motion to Disqualify, Plaintiff fails to provide substantial justification for failing to abide by the deadline for expert designation.

Plaintiff argues that the failure to designate Mr. Thompson as an expert sooner was harmless because Liberty Mutual has already had the opportunity to depose him on January 14, 2010, thus, Liberty Mutual

knows his opinions. At his deposition, Mr. Thompson said that he was "not brought in to work on the insurance claim," but his attorney intended to offer him as an expert witness in the future. Doc. No. 44–3, Thompson Dep. at 35, 46. However, he was not designated as an expert prior to the April 6 deadline.

Mr. Thompson, who inspected the Plaintiffs' property before suit was filed, testified:

[I] got hired to assess the roof system he had in place and help him provide the— and assessment of that roof system to determine—two things—that's why you have two documents or a compilation of two. That's why it turned into what it did.

The first thing he asked me to do was to assess and tell him whether he had a safety concern of the condition of his roof currently. Secondly, to give him an idea and provide my professional conclusion of what the cause of his current condition was.

Doc. No. 44–3 at 32–33.

Mr. Thompson issued two letters to Plaintiffs in September 2008 in which he provided his assessment of the damage to the roof and gave his professional opinion as to the cause of the loss. Doc. No. 44–4, Thompson Reports. In the Reports, Mr. Thompson concluded that "[t]he excessive leaning out of plane of the trusses supporting the main roof have a pattern suggesting that the lateral pressure which caused this condition happened in a single wind event … This conclusion is derived from the consistency of the leaning of the trusses in one direction …." and "[w]e are of the professional opinion that excessive lateral wind pressure is the leading contributing factor to the existing condition of this roof system as no evidence has been found that supports the roof being damaged by dead load conditions." *Id.* at 3. In addition to these opinions, Mr. Thompson testified regarding compliance with building code regulations, recommendations that he would have given Liberty Mutual prior to issuing

---

1. Mr. Thompson opines that wind was the cause of the loss, but does acknowledge that the roof was inadequately braced and lacked sheathing.

Plaintiffs do not dispute that Mr. Thompson's opinion is that of an expert witness.

the policy and Liberty Mutual's handling of the policy. Doc. No. 44–3 at 94–96, 97.

The expert disclosure requirements of Rule 26 are designed "to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir.2008) (quotation and citation omitted). By the time Plaintiff identified Mr. Thompson as an expert witness, and not simply a fact witness, there was no longer any time remaining in the discovery period for Liberty Mutual to re-depose him. Because Plaintiff made the disclosures after the close of discovery, Liberty Mutual would be prejudiced if Mr. Thompson were allowed to give expert opinions because it does not know the complete substance of or basis for the expert opinions and will not have all the information necessary under Rule 26 and/or time to act upon the information before trial. Had Plaintiffs timely disclosed Mr. Thompson as an expert witness and provided the required reports and information, Liberty Mutual would have had the opportunity to re-depose him in the context of his qualifications and specific opinions to be rendered prior to the discovery deadline (which the Court extended to April 6, 2010 to allow depositions of the disclosed experts).

Plaintiffs' delay in designating Mr. Thompson as their expert leaves Liberty Mutual without the chance to depose this expert witness. *See also Smith v. Jacobs Eng'g Group, Inc.*, No. 4:06cv496–WS, 2008 WL 5351047 (N.D.Fla. Mar.20, 2008) (prejudice found when required disclosures were made after the discovery period had lapsed); *Hubbard v. Edwards*, No. 3:04–cv–1 18(CDL), 2006 WL 2557904 (M.D.Ga. Sept. 1, 2006) (same). Discovery is now closed and trial is set for September 1, 2010. Absent the reopening of discovery and the attendant delay of trial, for which no motion has been made, the self-executing nature of Rule 37(c)(1) should be preserved. *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, No. 6:07–cv–222–Orl–35KRS, 2009 WL 1043974

(M.D.Fla. Apr.17, 2009); *Smith*, 2008 WL 5351047. Because Plaintiffs failed to timely disclose the expert—as opposed to fact witness—opinion of Mr. Thompson, and that failure was not substantially justified or harmless, Plaintiffs will not be allowed to rely on those opinions or any expert testimony of Thompson for any purpose in this case.

Plaintiff alternatively seeks leave to have Mr. Thompson testify as a rebuttal witness. However, it does not appear that his designation as an expert was within 30 days of Liberty Mutual's designation of its expert by March 1, 2010, as required under Rule 26(a)(2)(C), and his opinions clearly go beyond the scope of rebuttal evidence. Liberty Mutual's Motion to Prohibit Expert Testimony by William Thompson is **GRANTED in part.**

## II. Standard for Admissibility of Expert Testimony

Federal Rule of Evidence 702 governs the admission of expert testimony at trial. Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), laid out the standard for determining the admissibility of experts under Fed. R.Evid. 702. "The trial judge has a two-part duty to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[2] *Daubert*, 509 U.S. at 589, 113 S.Ct. 2786. The *Daubert* Court

---

2. In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Supreme Court made it clear that

*Daubert* applies to all types of expert testimony, whether scientific or not.

set forth a non-exhaustive list of relevant factors to consider in determining whether the methodology employed is reliable. *Id.* at 593–94, 113 S.Ct. 2786. The factors include whether the methods can be tested or have been subject to peer review, the potential rate of error, and whether the methods are generally accepted. *Id.* Since *Daubert,* courts have looked at additional factors, including whether an expert has properly accounted for alternative explanations (*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 154–55, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)), whether the conclusions were reasoned as carefully as they would have been outside of litigation (*Norris v. Baxter Healthcare Corp.,* 397 F.3d 878, 886 (10th Cir. 2005)), and whether an accepted premise is being extrapolated to unfounded claims (*Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 144–46, 118 S.Ct. 512, 139 L.Ed.2d 508(1997)).

The Eleventh Circuit applied *Daubert* in *Tuscaloosa v. Harcros Chemicals, Inc.,* 158 F.3d 548, 562 (11th Cir.1998), and held that expert testimony may be admitted if three requirements are met. First, the expert must be qualified to testify competently regarding the matter he or she intends to address. *Id.* Second, the methodology used must be reliable as determined by the *Daubert* inquiry. *Id.* Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue. *Id.; see also Cook v. Sheriff of Monroe County,* 402 F.3d 1092, 1107 (11th Cir.2005) (citing same three factors).

The burden of making this showing is on the party offering the expert, and admissibility must be shown by a preponderance of evidence. *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1257 (11th Cir.2002) (citations omitted). While "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," (*Daubert,* 509 U.S. at 596, 113 S.Ct. 2786 (citations omitted)), the Court is an essential gatekeeper and in all cases "must take care to weigh the value of [expert testimony] against its potential to mislead or confuse." *United States v. Frazier,* 387 F.3d 1244, 1263 (11th Cir.2004). Trial judges have considerable discretion in deciding how to evaluate expert testimony and whether it is reliable and relevant. *Kumho,* 526 U.S. at 152, 119 S.Ct. 1167.

*Application to Testimony of David Beasley*

 Beasley is an adjuster who issued a report as Plaintiffs' expert witness on April 1, 2010. Doc. No. 44–5. Liberty Mutual argues that Mr. Beasley should be disqualified from testifying as an expert because he lacks the necessary qualifications and his opinions are unreliable and convey improper legal conclusions. Doc. No. 44. Liberty Mutual contends that Beasley conceded that his experience is in adjusting insurance claims and that he is not qualified to exclude a construction defect as a cause of damages to Plaintiffs' roof, cannot opine as to roof construction or design, does not have knowledge of, or skill, experience, training or education in engineering, architecture or roof design, and did not in fact inspect the interior roof structure of the property.

Plaintiffs respond that Mr. Beasley's testimony meets the federal standards for expert testimony admissibility, in that he is qualified to render testimony on coverage given his roles as a public and independent adjustor as set forth under Florida Statutes. He is currently a public adjustor, as defined under Fla. Stat. § 626.854(1), and he was previously an independent adjustor under § 626.855. The qualifications for both types of adjustors requires that the adjuster "has had sufficient experience, training, or instruction concerning the adjusting of damages or losses under insurance contracts" and is sufficiently informed about such contracts, and the laws of Florida relating to such contracts. Fla. Stat. §§ 626.865. Mr. Beasley has more than 18 years of experience as an insurance adjustor, and his curriculum vitae lists his other knowledge, skill, experience, training and education, including his experiences as a Certified Umpire and Appraiser participating in more than 200 insurance disputes. Doc. No. 45. Mr. Beasley accompanied the general contractor hired by Plaintiffs to Plaintiffs' residence during the contractor's assessment and read his structural report, as well as the

report of Liberty Mutual's expert. Doc. No. 45.

This is an insurance coverage dispute, and Mr. Beasley is an experienced insurance adjuster. The Court finds that he is sufficiently qualified based on his experience and training to opine whether there was coverage under the insurance contract provisions in dispute.[3] The opinions he is offering here appear to be of the type he renders in the ordinary course of his profession, which is statutorily recognized as an area of expertise. Further, while his opinions may not be conclusive on the ultimate issues in the case, it does appear, as a prima facie matter, that his testimony is likely to be of assistance to the finder of fact.

As Plaintiffs point out in citing *Vision I Homeowners Association, Inc. v. Aspen Specialty Insurance Company*: "The qualification standard for expert testimony is 'not stringent' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." 674 F.Supp.2d 1321, 1325 (S.D.Fla.2009) (citing *Kilpatrick v. Breg, Inc.*, Case No. 08–10052–CIV, 2009 WL 2058384 (S.D.Fla. June 25, 2009)).

As the district court in *Vision 1 explained*: Relevant testimony from a qualified expert is only admissible if the expert knows of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988). However, absolute certainty is not required. *Id.* "Expert testimony is admissible which connects conditions existing later to those existing earlier provided the connection is concluded logically." *Id.* Whether a logical basis for admitting the testimony has been established is within the court's discretion, and the weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility. *Id.* at 663. Thus, "[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly

evaluates the testimony's weight and credibility." *Id.*

*Vision I,* 674 F.Supp.2d at 1325.

Mr. Beasley opined that the cause of the loss was wind, which qualified as coverage under the insurance policy; he admitted that because he was not an engineer or an architect, he was not qualified to answer the question of whether the loss would have occurred but for the inadequate construction or design of the roof. *Id.* at 90–91. He also testified that he was not qualified to be an expert on actual construction of roofs and could not eliminate a structural or design defect as a possible cause of the loss:

Q. Based on what you've told me about your experience with roof construction, do you consider yourself an expert in the field of roofing construction?

A. I think for determining coverage under a policy and dealing with the insurance contract aspects of it, yes. . . .

Q. What about the actual construction of roofs? Nothing dealing with insurance.

A. Again, I'm not an engineer or an architect, so, no, I don't claim to be an expert in that degree.

* * *

Q. Are you qualified to rule out a structural or design defect to a roof? If you look at a roof, are you able to rule that out as a cause of damage?

A. As I stated before, I'm not an engineer—okay—or an architect. So I wouldn't say that I was qualified to that exact question you're asking.

* * *

Q. So would your answer be, no, you're not qualified to rule out structural damage as a cause of damage to a roof? Structural design—I'm sorry—as a cause of damage to a roof.

A. Structural design—yes, that's what I'm stating. I'm not an engineer or an architect and I don't claim to be.

* * *

---

3. Mr. Beasley will not be permitted to offer opinions outside his expertise and qualifications. To the extent his conclusions arguably rely on subject matter knowledge beyond his ken, diligent cross examination (and perhaps a motion to strike his testimony) may be expected.

Q. Did you check whether the braces were nailed to the trusses?

A. No, ma'am. That's not my expertise.

* * *

Q. Do you know how to determine proper lateral bracing or differentiate between proper lateral bracing and improper lateral bracing

A. Again, as I've stated, I'm not an engineer or an architect. I don't.

*Id.* at 24, 26, 39, 51, 53.

Liberty Mutual's arguments go to the weight to be given to Mr. Beasley's testimony—who admittedly is not an engineer or architect—and not to its admissibility, and Plaintiffs will have the opportunity to cross-examine him regarding his opinions. To this extent, the Motion to Disqualify is **DENIED** in part as to David Beasley, subject to further order of the presiding judge at the trial.

### III. Plaintiffs' Arguments Concerning the Rule 3.01(g) Conference

Plaintiffs' counsel contends that the Motion to Disqualify should be denied as a sanction for Liberty Mutual's counsel failure to confer before filing the Motion because defense counsel never "spoke with" Plaintiffs' counsel, Mr. Morsch. Doc. No. 45. It is clear from the Notice of Filing Clarified Certificate of Conference (Doc. No. 46), filed in response to Mr. Morsch's assertion, that Liberty Mutual's counsel made sufficient attempts to reach Plaintiffs' counsel through an individual, "Ms. Sharan," as a representative in the office of Plaintiff's counsel on April 28, 2010 before filing the Motion on May 3, 2010, when no call was returned. Doc. No. 46 at 2.

Counsel for Plaintiffs, Mr. Morsch's, personal unavailability as "in California on business" is not an excuse for failing to return opposing counsel's call for at least three business days[4]. Moreover, it is certainly not a basis for Mr. Morsch to argue that counsel for "Defendant has made a volitional, knowing misrepresentation to the Court.... That cannot and should not be tolerated." Doc.

No. 45 at 10. Liberty Mutual's counsel appropriately relied on Mr. Morsch's staff to relay the substance of the messages left for him. Under the circumstances present here, Plaintiffs' counsel was also abundantly aware that Mr. Thompson had not been designated as an expert[5], and a motion to strike him as an expert was no surprise. There were sufficient attempts made to confer, and the Motion will not be denied as a sanction for failure to confer.

**DONE** and **ORDERED.**

---

4. There was also no response to an email from Liberty Mutual's counsel sent on May 5, 2010 regarding other discovery matters. Doc. No. 46 at 2.

5. *See* Doc. No. 44–2 at 14 (Thompson Dep. at 46–47).