[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 8, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14601
Non-Argument Calendar

_____

D. C. Docket No. 05-01203-CV-ODE-1

TORY BANKSTON,

Plaintiff-Appellant,

versus

NORFOLK SOUTHERN RAILWAY CORPORATION,
NORFOLK SOUTHERN CORPORATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 8, 2008)**

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

This is Tory Bankston's appeal from the district court's final judgment in favor of Norfolk Southern Railway Corporation and Norfolk Southern Corporation (collectively "Norfolk Southern") in this personal injury action. Bankston contends that the district court made three erroneous evidentiary rulings that entitle him to a reversal of that judgment and a new trial.[1]

**I.**

In September 2004 Bankston was walking alongside railroad tracks in Atlanta, Georgia when he was struck by a train operated by Norfolk Southern. As a result of this accident, Bankston was severely injured and lost both of his legs. Bankston claims that he was walking at least ten feet away from the tracks when he was struck and that a pole jutting out from the train snagged his backpack, pulled him sideways and pinned him against the train. Norfolk Southern disputes that account, suggesting instead that Bankston was attempting to board the moving train when the accident occurred.

In April 2005 Bankston sued Norfolk Southern and an unknown railroad engineer (under the fictitious name John Doe) in Fulton County Superior Court.

---

[1] In his reply brief, Bankston raises an additional issue in passing: "Whether the verdict and judgment entered in the District Court was supported by the evidence." Bankston's initial brief addressed only evidentiary issues. Because "[i]ssues that are not clearly outlined in an appellant's initial brief are deemed abandoned," Allison v. McGhan Med. Corp., 184 F.3d 1300, 1317 n.17 (11th Cir. 1999), we decline to address this additional question.

Bankston served Norfolk Southern, but he never served the John Doe railroad engineer. Norfolk Southern removed the case to federal court on diversity jurisdiction grounds. After the case was removed, the parties conducted discovery and Norfolk Southern moved for summary judgment. The district court denied Norfolk Southern's motion and the case proceeded to a jury trial.

Before trial, Bankston moved in limine to exclude: (1) the testimony of both Dr. Walter Ingram and Dr. Vladimir Dadashev that they believed the accident occurred while Bankston was trying to board a moving train, and a medical report by Dr. Ingram containing the same explanation of how the accident occurred; (2) lay opinion testimony by an Atlanta police officer speculating that Bankston was injured while attempting to cross the train tracks while the train was initially stopped but then started to move; and (3) evidence of Bankston's past felony convictions introduced to impeach his credibility. The district court denied Bankston's motion as to the doctors' testimony, Dr. Ingram's report, and the evidence of the past felony convictions. The district court deferred ruling on the police officer's lay opinion testimony.

After hearing the evidence and argument of both parties, the jury returned a verdict finding that Norfolk Southern was not liable for Bankston's injuries. The district court then entered a judgment in favor of Norfolk Southern. Bankston filed

3

this appeal.

## II.

As an initial matter, we must first address our own jurisdiction to hear this appeal. We posed a jurisdictional question to the parties asking whether the existence of the unserved John Doe defendant affected the finality of the judgment in favor of Norfolk Southern. The parties briefed the issue and both contend that the judgment was a final appealable order. We agree. In Insinga v. LaBella, 817 F.2d 1469 (11th Cir. 1987), we concluded that "where final judgment has been entered as to all defendants who have been served with process and only unserved defendants remain, the district court's order may be considered final under 28 U.S.C. § 1291 for purposes of perfecting an appeal." Insinga, 817 F.2d at 1469–70; see also Loman Dev. Co. v. Daytona Hotel & Motel Suppliers, Inc., 817 F.2d 1533, 1536 (11th Cir. 1987) ("[F]or the purposes of Rule 54, the unserved defendants were not yet 'parties' and no certification was necessary for the judgment to become final."). In this case, judgment has been entered in favor of the Norfolk Southern entities, the only parties who were served. The district court's judgment states that the action is "dismissed on the merits." Accordingly, that judgment ended the litigation and is final and appealable.

4

**III.**

Turning to the substance of this appeal, Bankston contends that the district court's final judgment should be reversed on the ground that the court made three erroneous evidentiary rulings. We review those rulings only for an abuse of discretion. Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002). This review is extremely deferential, see Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1103 (11th Cir. 2005) ("[T]he deference that is the hallmark of abuse-of-discretion review requires that we not reverse an evidentiary decision of a district court unless the ruling is manifestly erroneous. Thus, it is by now axiomatic that a district court enjoys considerable leeway in making these determinations." (internal quotation marks and citation omitted)), and we will reverse only where "a substantial right of the party is affected," Federal Rule of Evidence 103(a). Cf. Federal Rule of Civil Procedure 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence . . . is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do no affect any party's substantial rights.").

A.

Bankston first contends that the district court abused its discretion by denying his motion in limine to exclude Dr. Ingram's hospital report, which contained a description of how the accident occurred, as well as Dr. Ingram's and Dr. Dadashev's testimony on the same subject, on the ground that the report and testimony were inadmissible hearsay. Bankston argues that the descriptions of the accident in the doctors' testimony and in Dr. Ingram's report are inadmissible hearsay and that the statements are neither admissions of a party opponent nor statements made for the purpose of medical diagnosis or treatment.

Hearsay is typically not admissible unless an exception applies. Fed. R. Evid. 802. Federal Rule of Evidence 801(d) provides that a "statement is not hearsay if . . . [t]he statement is offered against a party and is . . . the party's own statement." Fed. R. Evid. 801(d)(1). Rule 803(4) excludes from the hearsay rule "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof as reasonably pertinent to diagnosis or treatment." Fed. R. Evid. 803(4).

We need not reach Bankston's argument, because even if we were to conclude that the district court's denial of Bankston's motion on this point were

6

erroneous, that error would be harmless. First, Bankston did not seek in his motion in limine to exclude another medical report, authored by Dr. Dadashev, which contained an almost verbatim description of how the accident occurred. Nor did Bankston object on hearsay grounds when Norfolk Southern offered Dr. Dadashev's report into evidence and the district court admitted it. A party must make a timely objection to preserve an evidentiary issue for appellate review. Fed. R. Evid. 103(a)(1); United States v. Houston, 456 F.3d 1328, 1338 (11th Cir. 2006); United States v. Zinn, 321 F.3d 1084, 1090 n.7 (11th Cir. 2003); Irving v. Mazda Motor Corp., 136 F.3d 764, 767 (11th Cir. 1998). Because Dr. Dadashev's report was not objected to on hearsay grounds, and because it contained essentially the same statements explaining how the accident occurred, the jury would have had the same information before it even if the district court had granted Bankston's motion in limine with regard to Dr. Ingram's report and both doctors' testimony.

Moreover, the district court's decision to admit Dr. Ingram's report and to allow the testimony of Dr. Ingram and Dr. Dadashev did not affect Bankston's "substantial rights" such that reversal is necessary. Norfolk Southern presented testimony and exhibits to the jury from which the jury reasonably could have concluded that Bankston's theory of how the accident occurred was impossible. Witnesses testified that the type of train involved in the accident would not have

7

had any poles jutting out from it. There was also testimony that given the close quarters the train passed through near where the accident occurred, anything protruding from the train would have been destroyed. Additionally, Norfolk Southern elicited testimony from two of its employees on another train that passed the train involved in the accident who visually inspected that train and did not see any poles protruding from it. All of this evidence soundly disproved Bankston's theory of how the accident occurred, and all Bankston's offered to counter it was his own story. Even if the district court had excluded the testimony and report that suggested Bankston had tried to board the moving train, there was still such overwhelming evidence that the accident could not have occurred the way Bankston said it did, or in a way that would render Norfolk Southern liable to him, that his substantial rights were not affected by the admission of the doctors' testimony and Dr. Ingram's report.

B.

Bankston also contends that the district court abused its discretion by denying his motion in limine to exclude opinion testimony by a police officer, who arrived at the scene of the accident shortly after it happened, concerning how the accident occurred. Federal Rule 701 authorizes opinion testimony by lay witnesses where the opinion is: "(a) rationally based on the perception of the witness, (b)

8

helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of [the Rule governing expert testimony]." Fed. R. Evid. 701.

The district court did not deny Bankstown's motion in limine as to the opinion in question but instead deferred ruling on the issue. When Norfolk Southern's counsel asked the officer for his opinion, based on his observations of the scene of the accident and Bankston's injuries, of how the accident occurred, the district court overruled Bankston's counsel's objection to the question and allowed the officer to offer his lay opinion. The officer then testified that he that believed right before the accident, "the train was actually at a stop." He offered his opinion that Bankston:

> was trying to either go over [the train] or underneath it when it started to move which caused him to be pinned by the wheels which is why he got caught and kind of ground up. Because if it was going fast, it would have cut right through him. So it was kind of going slowing and pinched him, so he was able to go with it until he was able to get free.

R4:82:269.

As with Bankston's contention that the doctors' testimony and report should have been excluded, we need not reach this issue because even if the district court abused its discretion in permitting it, any error would be harmless. The police

9

officer's opinion as to how the accident occurred was not the theory Norfolk Southern argued to the jury—Norfolk Southern maintained that Bankston was injured while trying to board a moving train. See generally Jones v. Otis Elevator Co., 861 F.2d 655, 661 (11th Cir. 1988) (noting that it was harmless error for the district court to instruct the jury on an erroneous theory that neither party argued to the jury and that was not "not necessary to substantiate the jury's verdict"). Moreover, as we have already explained, there was overwhelming evidence that Bankston's explanation of how the accident occurred was not tenable, thereby relieving Norfolk Southern of any liability for his injuries without the officer's opinion testimony.

## C.

Bankston's final contention is that the district court abused its discretion in denying his motion in limine to exclude "any reference to any past or present criminal conviction." The thrust of his argument is that his past criminal convictions are in no way probative and that they were extremely prejudicial. The Federal Rules of Evidence permit impeachment of a witness' truthfulness with evidence of a crime that is "punishable by death or imprisonment in excess of one year under the law which the witness was convicted." Fed. R. Evid. 609(a)(1). To guard against the dangers of unfair character evidence, the rules require the court to

10

determine whether "the probative value of admitting [the evidence of past felony convictions] outweighs its prejudicial effect." Id.

Norfolk Southern impeached Bankston's credibility with evidence of three felony convictions that took place only months before his case went to trial. In its written order denying Bankston's motion in limine, the district court explicitly conducted the required balancing of the probative value and prejudicial effect of the evidence and concluded that it was admissible. The district court enjoys wide latitude in exercising its discretion in this area, see United States v. Abel, 469 U.S. 45, 54, 105 S. Ct. 465, 470 (1984), and Bankston has not demonstrated that the court abused its discretion. Evidence of Bankston's three recent felony convictions is obviously prejudicial, but it is also highly probative of his character for truthfulness. See Campbell v. Greer, 831 F.2d 700, 707 (7th Cir. 1987) ("Rule 609 and the common law tradition out of which it evolved rest on the common-sense proposition that a person who has flouted society's most fundamental norms, as embodied in its felony statutes, is less likely than other members of society to be deterred from lying under oath in a trial by the solemnity of the oath, the (minuscule) danger of prosecution for perjury, or internalized ethical norms against lying. If so, this is something a jury should be permitted to take into account in evaluating a witness's believability.").

**AFFIRMED.**