[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12956
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-24139-KMW


JENNIFER CEITHAML,

Plaintiff - Appellant,

versus

CELEBRITY CRUISES, INC.,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 25, 2018)

Before WILLIAM PRYOR, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Jennifer Ceithaml sued Celebrity Cruises, Inc. after she injured her ankle during an offshore zip-lining excursion while a passenger on a Celebrity cruise ship. The district court granted summary judgment to Celebrity. On appeal, Ceithaml argues that Celebrity (1) is vicariously liable for the negligence of the zip-line operator, (2) was negligent in hiring and retaining the zip-line operator, and (3) negligently failed to warn her about the dangers of the zip-line. After careful review, we affirm.

## I.    BACKGROUND

In December 2014, Ceithaml and her husband were passengers on the cruise ship Celebrity *Summit*. While a passenger on the cruise, Ceithaml participated in an off-shore excursion called "Adventure Seekers Ultimate Combo." The excursion was operated by Wacky Rollers Adventure Vacations and Expeditions, Ltd. ("Wrave"). During the zip-line portion of the excursion, Ceithaml failed to brake when approaching a zip-line platform attached to a tree. She pulled up her legs to avoid striking the platform, but her extended legs struck the tree. As a result of the impact, she fractured her ankle. Ceithaml had received instructions from Wrave staff on how to use a "brake rope" while zip-lining, but she could not recall if she used the rope and did not know why she failed to brake.

Wrave, which has been in business since 1998, began offering shore excursions for Celebrity passengers in 2004 and zip-line excursions in 2006.

2

Celebrity decided to work with Wrave because of its "great reputation" and because other cruise lines had worked successfully with it.  Doc. 52-2 at 49.[1] Celebrity also chose Wrave in part because it had been certified by an outside inspector accredited by the Association of Challenge Course Technology ("ACCT").

As part of its excursion service provider selection process, Celebrity required potential independent contractors, including Wrave, to maintain insurance and to provide a safety history report.[2]  In addition, Wrave was required to notify Celebrity of any new accidents or injuries.  Although Celebrity had been notified of one incident on a rope bridge—a distinct portion of the excursion course— Celebrity had not been notified of any incidents involving the zip-line.  In fact, over their years of working together, Celebrity had received only positive reviews from passengers regarding the zip-line.  In addition to passenger reviews, Celebrity also periodically sent its own staff to visit the site and evaluate the excursion experience.  Celebrity retained no records of the staff reports, however, nor did it have records showing that anyone had ever performed a safety inspection of Wrave's zip-line course.

---

[1] Citations to "Doc #" refer to the numbered entries on the district court's docket.

[2] Wrave's insurance policy stated that the insurance company neither made safety inspections nor warranted that conditions were safe.

Celebrity charged its passengers directly for the shore excursion and remitted a flat-fee payment to Wrave on a per-participant basis. Celebrity's agreement with Wrave required Wrave's excursion services to satisfy the highest industry standards but specified that control of and responsibility for the excursion remained exclusively with Wrave. The agreement described Wrave's relationship to Celebrity as that of an independent contractor. Either party could terminate the agreement if the other breached, but only Celebrity could terminate "for convenience." Doc. 52-9 at 1.

Ceithaml received multiple notices that Wrave was an independent contractor and that Celebrity had no control over the zip-line operation or any other shore excursion. First, when Ceithaml and her husband purchased the tickets for the cruise on their computer, they accepted terms and conditions of the cruise tickets, which included a paragraph entitled "Shore Excursions, Tours, Facilities, or Other Transportation." That paragraph stated:

> The providers, owners and operators of [excursion] services, conveyances, products and facilities are independent contractors and are not acting as agents or representatives of Carrier. Even though Carrier may collect a fee for, or otherwise profit from, making such arrangements and offers for sale shore excursions . . . and other similar activities or services taking place off the Vessel for a profit, it does not undertake to supervise or control such independent contractors or their employees, nor maintain their conveyances or facilities, and makes no representation, whether express or implied, regarding their suitability or safety.

4

Doc. 52-1 at 20.  This same paragraph was contained in a printed "Guest Ticket Booklet" that Ceithaml and her husband received when they boarded the ship.

Second, when Ceithaml and her husband purchased the tickets for the excursion, a "Shore Excursions Guide" was available on Celebrity's website which also contained a "Terms and Conditions" section.  That guide provided:  "SHORE EXCURSIONS, TRANSFERS AND SHORE TOUR PACKAGES ARE OPERATED BY INDEPENDENT CONTRACTORS."  Doc. 52-5 at 83.

Third, when Ceithaml received the physical ticket for the zip-line excursion, the front of the ticket stated: "Tour operated by:  Wrave Ltd."  Doc. 52-6 at 1.  Although the front of the ticket also contained a "Celebrity X Cruises" logo, the back of the ticket stated the following:  "The providers of [excursion] services are independent contractors and are not acting as agents or representatives of . . . Celebrity Cruises Inc. . . . or [its] respective affiliates or subsidiaries."  *Id.*

Fourth, when Ceithaml arrived at the zip-line, she signed a document entitled "Wacky Rollers Informed Consent & Participation Waiver of Liability/Release of Claims" (the "Liability Waiver").  Doc. 52-7 at 1.  By signing the Liability Waiver, she agreed that "the ticket seller or cruise line is not responsible for, and has no control over, the actual operation of this excursion or activity."  *Id.*

5

Despite these multiple disclosures, Ceithaml believed that Wrave was Celebrity's agent and that Celebrity controlled the zip-line excursion. Celebrity marketed the shore excursions on its website, recommending that passengers "[d]iscover the heart of the destinations with our knowledgeable and experienced guides" and noting that "excursions are planned by insured partners who adhere to the highest safety standards in the industry." Doc. 61-1 at 131.[3] During the cruise, Celebrity advertised the excursions through photos and videos; passengers could purchase tickets directly through their onboard charge accounts using an interactive television system or at an "excursion desk" operated by Celebrity staff.

After her accident, Ceithaml brought suit against Celebrity, alleging three counts: (1) vicarious liability under theories of actual agency, apparent agency, and joint venture for Wrave's negligence; (2) negligent hiring and retention; and (3) negligent failure to warn and failure to correct. Celebrity moved for summary judgment on all counts; the district court granted the motion. This is Ceithaml's appeal.

## II.    STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment, construing the facts and all reasonable inferences therefrom in favor of the

---

[3] The same page of Celebrity's website also stated, however, that "providers of tour arrangements are independent contractors and are not acting as agents or representatives of Celebrity Cruises." Doc. 61-1 at 136.

nonmoving party. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then there is no genuine dispute as to any material fact because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III.   ANALYSIS

On appeal, Ceithaml argues that the district court erred in granting summary judgment to Celebrity on each of her three negligence claims. We address each claim in turn.

## A.   Vicarious Liability for Wrave's Negligence

Ceithaml argues that Celebrity is vicariously liable for Wrave's alleged negligence. Specifically, she argues that Celebrity is liable because Wrave was either Celebrity's actual agent or its apparent agent.[4] For the reasons that follow, we disagree.

---

[4] Ceithaml also argued to the district court that Celebrity was vicariously liable for Wrave's negligence under a joint venture theory. Because she has not advanced this argument on appeal, however, it is deemed abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739

*1.    Actual Agency*

Assuming, without deciding, that Wrave was negligent, Celebrity is not vicariously liable under a theory of actual agency because Ceithaml has failed to create a genuine dispute of material fact about whether Wrave was Celebrity's actual agent. "[T]he existence of an agency relationship is a question of fact under the general maritime law." *Franza v. Royal Caribbean Cruises, Ltd.* 772 F.3d 1225, 1235-36 (11th Cir. 2014).[5] An agency relationship requires the following: "(1) the principal to acknowledge that the agent will act for it; (2) the agent to manifest an acceptance of the undertaking; and (3) control by the principal over the actions of the agent." *Id.* at 1236 (internal quotation marks omitted). Ceithaml's actual agency argument fails because there is insufficient evidence for any reasonable jury to find that Celebrity exercised control over Wrave's actions.

In determining whether the principal exercised control over the actions of the alleged agent, the following factors are "probative" in the maritime context:

> (1) direct evidence of the principal's right to or actual exercise of control; (2) the method of payment for an agent's services, whether by time or by the job; (3) whether . . . the equipment necessary to

F.3d 678, 680 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground . . . .").

[5] Federal maritime law applies because the alleged tort occurred at an offshore location during the course of a cruise. *See Doe v. Celebrity Cruises*, 394 F.3d 891, 900-02 (11th Cir. 2004).

perform the work is furnished by the principal; and (4) whether the principal had the right to fire the agent.

*Id.* at 1236-37 (internal quotation marks omitted).  As to the first factor, the agreement between Celebrity and Wrave expressly provided that control of and responsibility for the shore excursion remained exclusively with Wrave.  Although Celebrity sold tickets to the excursion and marketed it to passengers, there is no evidence that Celebrity had the right to control or even participate in Wrave's operation of the zip-line.[6]  As regards the second factor, a payment by time "normally suggests an agency relationship."  *Id.* at 1237.  But Celebrity paid Wrave per customer, not by time.  The third factor favors Celebrity because it provided Wrave with no equipment necessary to operate the zip-line.  As to the fourth factor, the agreement between Celebrity and Wrave did provide that Celebrity could cancel the contract at its convenience; however, this single factor is insufficient for a reasonable jury to find that Celebrity exercised control over Wave's zip-line operation.  Accordingly, no actual agency relationship existed between Celebrity and Wrave.

---

[6] Ceithaml points to language in the companies' agreement requiring Wrave to provide an excursion that "satisf[ies] the highest standards in the industry" and stating that tours could not be "materially modified without the prior written consent of [Celebrity]."  Doc. 52-9 at 1, 5. These statements, however, merely ensured that Wrave provided an excursion matching what Celebrity contracted for and marketed to its passengers.  They did not establish that Celebrity had actual control over Wrave's zip-line operation.

9

2.    *Apparent Agency*

Ceithaml likewise has failed to create a genuine dispute of material fact about whether Wrave was Celebrity's apparent agent.  In maritime tort law, the doctrine of apparent agency is a question of fact that requires a finding of three elements.  *Id.* at 1251-52.  "[F]irst, a representation by the principal to the plaintiff, which, second, causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit, and which, third, induces the plaintiff's detrimental, justifiable reliance upon the appearance of agency."  *Id.* at 1252.  Here, Ceithaml cannot satisfy the second element—whether she *reasonably* believed that Wrave was authorized to act for Celebrity.

Ceithaml points to the following facts suggesting her belief that Wrave was Celebrity's agent was reasonable:  two sentences on Celebrity's website explaining that shore excursions were "planned by our insured partners" and that the tours were led by "our knowledgeable and experienced guides," the Celebrity logo on the Shore Excursion Guide and shore excursion ticket, and Celebrity's pervasive onboard advertising for shore excursions.  But despite these facts, Ceithaml's belief that Wrave was Celebrity's agent was unreasonable in light of the multiple disclaimers she received—when booking the cruise, when booking the shore excursion, when arriving on the ship, when receiving the excursion ticket, and when signing the Liability Waiver.  All of these disclaimers made clear that shore

10

excursion operators like Wrave were independent contractors and that Celebrity had no control over the operation of the shore excursions.

Ceithaml argues that the disclaimers were accompanied by conflicting statements undermining the message that Wrave was an independent contractor. We are not persuaded.  In support of her argument, Ceithaml points to the Shore Excursion Guide, which stated that tours were operated by independent contractors.  On the same page, she notes, Celebrity also stated that it "acts as agent only for passengers" and that it "acts only as agent for others who operate such [shore excursion] services."  Doc. 52-5 at 83.  But these statements do not reasonably suggest that Wrave was Celebrity's agent or that Celebrity controlled the shore excursions.  Indeed, they suggest the opposite—that Celebrity served only as a conduit between passenger and operator.

As further evidence of the supposedly conflicting messages, Ceithaml points out that the Shore Excursion Guide did not identify Wrave as the excursion operator but instead bore the Celebrity logo on every page. She similarly relies on Celebrity's logo on the excursion ticket, which, she notes, was larger than the identification of Wrave as the tour operator.  But Celebrity's logo on these documents does not conflict with the express disclaimers explaining that shore excursion operators like Wrave were independent contractors and that Celebrity did not control the excursions.  These repeated disclaimers preclude Ceithaml's

11

argument that she reasonably believed that Wrave was Celebrity's agent.

Accordingly, there was no apparent agency relationship between Wrave and

Celebrity.

Because Wrave was neither Celebrity's actual agent nor its apparent agent,

Celebrity cannot be vicariously liable for Wrave's alleged negligence.  The district

court thus properly granted summary judgment to Celebrity on count one of

Ceithaml's complaint.

## B.    Negligent Hiring and Retention

Next, Ceithaml argues that Celebrity was negligent in its hiring and retention

of Wrave as a shore excursion operator.

> [A]n employer is subject to liability for physical harm to third persons
> caused by his failure to exercise reasonable care to employ a
> competent and careful contractor (a) to do work which will involve a
> risk of physical harm unless it is skillfully and carefully done, or (b) to
> perform any duty which the employer owes to third persons.

*Davies v. Comm. Metals Co.*, 46 So. 3d 71, 73 (Fla. Dist. Ct. App. 2010) (internal

quotation marks omitted).[7]  To prevail on a negligent hiring claim, a plaintiff must

prove facts establishing three elements:  "(1) the contractor was incompetent or

unfit to perform the work; (2) the employer knew or reasonably should have

known of the particular incompetence or unfitness; and (3) the incompetence or

---

[7] We look to Florida law because "[i]n analyzing a maritime tort case, we rely on general principles of negligence law," *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (internal quotation marks omitted), including state law to the extent it does not conflict with federal maritime law, *see Just v. Chambers*, 312 U.S. 383, 388 (1941).

unfitness was a proximate cause of the plaintiff's injury." *Id.* at 74. Ceithaml's

negligent hiring and retention claim fails because she has failed to create a genuine

dispute of material fact about whether Celebrity knew or reasonably should have

known about any incompetence or unfitness on Wrave's part regarding the zip-

line. Because Ceithaml cannot establish the second element, we need not address

whether Wrave was in fact unfit to operate a zip-line, or whether, if so, its

unfitness was a proximate cause of her injuries.

Ceithaml argues that Celebrity reasonably should have known about

Wrave's alleged unfitness but did not because Celebrity failed to "diligently

inquire" into Wrave's fitness. Appellant's Br. at 45. We disagree. Celebrity

chose Wrave because it had a positive reputation, worked with other reputable

cruise lines, and had years of experience operating shore excursions. As part of its

selection process, Celebrity also requested a safety history report from Wrave,

which revealed no injuries. Further, under its agreement with Celebrity, Wrave

was required to maintain insurance[8] and to report any accidents or incidents

involving injuries. With this reporting procedure in place, Celebrity received no

reports of injuries sustained on Wrave's zip-line in over eight years of operation.

In fact, Celebrity had received only positive reviews regarding Wrave's zip-line

---

[8] Ceithaml notes that Wrave's insurance policy stated that it did not make safety inspections and did not warrant that conditions were safe. Such a disclaimer did not, as Ceithaml argues, put Celebrity on notice about any kind of unfitness on Wrave's part, however.

13

excursion.  Under these facts, Celebrity's decision to hire and retain Wrave was reasonable and its inquiry into Wrave's fitness was diligent.

In support of her argument that Celebrity failed to inquire diligently into Wrave's fitness, Ceithaml notes that Celebrity did not conduct safety inspections of Wrave's challenge course (or ask to see the results of any such inspections) even after another passenger was injured on the rope bridge portion of the course three years before Ceithaml's accident.  This argument is unavailing for two reasons.  First, Celebrity's knowledge about an injury on a rope bridge is not probative of whether it reasonably should have known about any unfitness regarding the zip-line.  *Cf. Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988) (explaining that similar accidents may be probative of defendant's constructive notice regarding a defect only if "conditions substantially similar to the occurrence in question . . . caused the prior accident").  Second, Ceithaml cites no authority establishing that a company like Celebrity has a duty to conduct its own safety inspections or review the results of such inspections when hiring and retaining an independent contractor.  Although Ceithaml argues that expert witness reports in the record establish that ACCT sets the industry standards for zip-line operations, these reports, at most, are probative of whether Wrave was negligent.  *See Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1282 (11th Cir. 2015) ("[E]vidence of custom within a particular industry, group, or organization is admissible as bearing

14

on the standard of care in determining negligence." (internal quotation marks omitted)).  The reports do not, however, create a dispute of fact about whether Celebrity failed to diligently inquire into Wrave's fitness by not performing its own inspections or reviewing the inspections of others.[9]

In sum, Ceithaml has failed to create a genuine dispute of material fact about whether Celebrity knew or reasonably should have known that Wrave was unfit to operate the zip-line course.  The district court thus properly granted summary judgment to Celebrity on Ceithaml's count two, the negligent hiring and retention claim.

## C.    Negligent Failure to Warn

Ceithaml's negligent failure to warn claim fails for similar reasons.  To establish negligence, the plaintiff must show that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).  A ship owner generally owes to its passengers a duty to exercise reasonable care under the circumstances, *Franza*, 772 F.3d at 1233, which includes

---

[9] Ceithaml similarly argues that Celebrity should have known that Wrave was unfit to operate a zip-line because Wrave's external ACCT-accredited inspector had been administratively dissolved two years before Ceithaml's accident.  The record is unclear as to whether the company had in fact dissolved.  But even assuming it had, nothing in the record or the applicable law establishes that Celebrity was responsible for ensuring that Wrave submitted to external ACCT-inspections.

15

"a duty to warn of *known dangers* beyond the point of debarkation in places where passengers are invited or reasonably expected to visit," *Chaparro*, 693 F.3d at 1336 (emphasis added).

As explained in Part III.B., Ceithaml has failed to create a genuine dispute of material fact about whether Celebrity knew or reasonably should have known about any allegedly dangerous conditions regarding the zip-line. Celebrity diligently inquired into Wrave's fitness, and the evidence is undisputed that Celebrity had no knowledge of any prior incidents involving Wrave's zip-line. Ceithaml argues that because Celebrity represented that Wrave "adhere[d] to the highest safety standards in the industry" it had a duty to warn her if it knew that those standards were not met. Even assuming this is true, Ceithaml has not created a genuine dispute about whether Celebrity knew or reasonably should have known that Wrave was not adhering to such standards. The district court thus properly granted summary judgment to Celebrity on Ceithaml's count three, the negligent failure to warn claim.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment to Celebrity.

**AFFIRMED.**

16